Filed 3/13/26  P. v. Casique CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>ERNEST JOHNNY CASIQUE,<br><br>　　Defendant and Appellant. | B337972<br><br>(Los Angeles County<br>Super. Ct. No. MA066123) |

APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez and Lauren Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

# I.   INTRODUCTION

Defendant Ernest Casique appeals from an order denying his petition for resentencing pursuant to Penal Code section 1172.6.[1]  Defendant contends there was insufficient evidence to support the trial court's finding that he could still be convicted of felony murder as a major participant who acted with reckless indifference to human life.  We affirm.

# II.   BACKGROUND

A.   *Underlying Conviction*

1.   Factual Background[2]

Andrew Cachu, Silverio Rodriguez-Garcia, and Carlos Monroy were members of the Down as Fuck gang.  Defendant was a member of the Palmas 13 Kings gang.  Cachu's brother was in a relationship with defendant's sister, and defendant spent a lot of time with Cachu and his girlfriend, Kaylee Fuentes.

On March 31, 2015, at 8:30 p.m., Fuentes, Cachu, Rodriguez-Garcia, and Monroy drove to visit defendant at his

---

[1]   Further statutory references are to the Penal Code.
The Legislature renumbered section 1170.95 as section 1172.6 effective June 30, 2022.  (Stats. 2022, ch. 58, § 10.)  For clarity, we will refer to section 1172.6 throughout this opinion.

[2]   We judicially notice the record in defendant's direct appeal. (*People v. Casique* (May 23, 2019, B284052) [nonpub. opn.].)  We state the facts in the light most favorable to the judgment below. (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).)

home.  Upon their arrival, they met defendant, who was in his front yard.  Defendant approached the car and asked the driver, Cachu, for a ride to Palmdale Boulevard (in Palmdale, California) because he wanted to find someone who had argued with defendant's friends earlier that day.  Cachu agreed, and defendant got into the backseat of the car.

As the group drove down Palmdale Boulevard, they passed a burger restaurant, at which point defendant stated, "He's right there, let me out."  Cachu then drove the car to a nearby parking lot and four of its occupants, Cachu, Rodriguez-Garcia, Monroy, and defendant, got out of the car.  Cachu told Fuentes, who remained in the car, to drive to the burger restaurant.  The four men then walked towards the restaurant.

Nicole King was the girlfriend of the victim, Louis Amela. Amela had traveled by bicycle to meet King at the burger restaurant where the two sat at a window nearby where Amela had left his bicycle.  Defendant entered the restaurant and made a loud ruckus at the counter.  Defendant then walked out, hitting the doors loudly with his hands.  He then started to ride away on Amela's bicycle.  Amela ran out of the restaurant, caught defendant, and the two men began to punch one another.  After a few minutes, two more individuals, including Cachu, approached the combatants.  Defendant and one of the individuals grabbed Amela by his jacket:  defendant held onto Amela's right side and the other man held onto Amela's left side.  Amela jumped a few times to get away and get out of his jacket to escape.  Cachu then shot Amela twice in the back.  After the shooting, defendant jumped up and down, saying, "Yeah."  He then rode away on Amela's bicycle.  Amela died from a gunshot wound to the chest.

2.    Procedural History

On July 7, 2016, the Los Angeles County District Attorney filed a two-count amended information against defendant and Cachu.  Both defendants were charged in count 1 with murder (§ 187, subd. (a)), and in count 2 with second degree robbery (§ 211).  The District Attorney alleged firearm allegations for count 1 based on the use and discharge of a firearm by a principal causing great bodily injury pursuant to section 12022.53, subdivisions (b), (c), (d), and (e)(1); a gang allegation pursuant to section 186.22, subdivision (b)(4) for count 1; and a gang allegation pursuant to section 186.22, subdivision (b)(1)(C) for count 2.

Defendant and Cachu pleaded not guilty and proceeded to a jury trial.  On July 20, 2016, the jury found defendant guilty of first-degree felony murder and second-degree robbery.  The jury found all firearm and gang allegations to be true.  The jury also found Cachu guilty on both counts and found the sentencing enhancements to be true.

On July 10, 2017, the trial court sentenced defendant to 25 years to life on count 1 and imposed a consecutive 25-year enhancement pursuant to section 12022.53, subdivisions (d) and (e)(1) (intentional discharge of a firearm causing great bodily injury), for a total term of 50 years to life in state prison.  The court further applied enhancements pursuant to sections 186.22, subdivision (b) (gang sentence enhancement of 10 years), and 12022.53, subdivisions (b), (c), and (e)(1) (firearm sentence enhancements of 10 and 20 years), which were stayed by the court pursuant to section 654.  On count 2, the court sentenced defendant to five years, with a consecutive 10-year enhancement

4

pursuant to section 186.22, subdivision (b).  The court also stayed the sentence for count 2 pursuant to section 654.

Defendant appealed.  In a nonpublished opinion, we modified the judgment by striking the gang and firearm enhancements, and affirmed the judgment as modified.  (*People v. Casique*, *supra*, B284052.)  Defendant's sentence was modified to 25 years to life.

B.  *1172.6 Petition*

On July 30, 2019, defendant filed a section 1172.6 petition, declaring, among other things, that:  an information was filed against him allowing the prosecution to proceed under a theory of felony murder; at trial he was convicted of first degree murder pursuant to the felony murder rule; and he could not now be convicted of first degree murder because of changes made to sections 188 and 189, effective January 1, 2019.  The trial court appointed counsel for defendant.

The District Attorney opposed the petition, asserting that he was a major participant in the robbery and acted with reckless indifference to human life, but conceded that defendant had made a prima facie showing of eligibility for relief.  The trial court issued an order to show cause and set the matter for an evidentiary hearing.

On May 2, 2024, the trial court, which had presided over the trial, conducted an evidentiary hearing.  The court took judicial notice of the court file, trial transcripts, and a stipulation.[3]  Following argument by the parties, the court denied

---

[3]    The parties stipulated to Cachu's statements to undercover law enforcement officers while in custody.  Cachu stated among

the petition, concluding that the prosecution had proven beyond a reasonable doubt that defendant was a major participant who acted with reckless indifference to human life. Defendant timely appealed.

## III. DISCUSSION

Defendant contends that substantial evidence does not support the trial court's finding that defendant acted with reckless indifference to human life.[4]

A. *Applicable Law*

At a section 1172.6 evidentiary hearing, "the prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under the law as amended by Senate Bill [No.] 1437 (§ 1172.6, subd. (d)(3)). In addition to evidence admitted in the petitioner's prior trial, both '[t]he prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens.' (*Ibid*.) 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.' (*Ibid*.)" (*People v. Wilson* (2023) 14 Cal.5th 839, 869.)

---

other things that the shooting was "[n]eighborhood shit" and he "was doin' my own shot thing."

[4] Defendant does not dispute that there was sufficient evidence he was a major participant in the underlying robbery.

6

"[A] trial court's denial of a section 1172.6 petition is reviewed for substantial evidence.  [Citation.]  Under this standard, we review the record ""in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."" [Citation.]" (*Reyes, supra,* 14 Cal.5th at p. 988.)

"A participant in the perpetration or attempted perpetration of a [robbery] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e).)

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'  [Citation.]  Examples include 'the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property.'  [Citation.]  Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' [Citation.]

"Reckless indifference to human life has a subjective and an objective element. [Citation.] As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.] As to the objective element, "'[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."' [Citations.] 'Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death"' satisfies the statutory requirement. [Citation.] Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life. [Citations.]

"We analyze the totality of the circumstances to determine whether [the defendant] acted with reckless indifference to human life. Relevant factors include: Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks

8

of violence during the felony? [Citation.] "'[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.'" [Citations.]" (*In re Scoggins* (2020) 9 Cal.5th 667, 676–677, citing *People v. Clark* (2016) 63 Cal.4th 522 617–623 (*Clark*).)

B. *Analysis*

1. Physical Presence and Opportunity to Restrain Confederate or Aid Victim

Presence is important to culpability because it allows a defendant to observe his cohort's actions and demeanor and determine whether his cohort's behavior tends to suggest a willingness to use lethal force. (*Clark*, *supra*, 63 Cal.4th at p. 619.) Here, defendant was present at the shooting by design. Had he merely sought to steal Amela's bicycle, he could have done so without entering the restaurant and drawing attention to his theft. Instead, he lured Amela outside, where he would be confronted by defendant's cohorts. Even after the physical altercation started, defendant could have aided Amela by letting him go but instead held onto him as Cachu shot him. And, following the shooting, defendant jumped up and down in celebration and then rode away on Amela's bicycle, demonstrating that defendant had no intention to aid him. Defendant's physical presence and opportunity to aid the victim weigh heavily in favor of a finding of reckless indifference.

9

### 2. Efforts to Minimize Risk of Violence

The evidence supports a finding that defendant made no efforts to minimize the risk of violence to Amela, but instead sought out a violent altercation. It was defendant who asked Cachu and others to help him find Amela. Further, as discussed above, defendant lured Amela outside, which resulted in the fatal shooting, and then celebrate the shooting afterwards. Thus, defendant made no effort to minimize the risk of violence, a factor that weighs in favor of a finding of reckless indifference.

### 3. Duration of Felony

"Where a victim is held at gunpoint, kidnapped, or *otherwise restrained in the presence of perpetrators* for prolonged periods, 'there is a greater window of opportunity for violence' [citation], possibly culminating in murder." (*Clark*, *supra*, 63 Cal.4th at p. 620, italics added.) Defendant went into the restaurant to lure Amela outside, fought with Amela, and then was joined by Cachu and another individual. He then restrained Amela while Cachu shot him. The period of interaction between the cohort and Amela therefore was sufficiently long to weigh in favor of a finding of reckless indifference.

### 4. Youth

Defendant, who was nearly 21 years old at the time of the crime, argues that his youth supported a finding that he did not act with reckless indifference to human life. We disagree. Although youth can be a relevant factor for determining whether a defendant acted with reckless indifference (see *People v. Keel*

10

(2022) 84 Cal.App.5th 546, 558–559), it is not dispositive and does not negate the substantial evidence of reckless indifference present here.

## IV.   DISPOSITION

The order denying the section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.

11